# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION (CLEVELAND)

| | | |
|---|---|---|
| **BRITTANY CRIPLIVER,** | : | **Case No. 1:18-cv-02208** |
| **CAMILA DAVALOS,** | : | |
| **MARIANA DAVALOS,** | : | |
| **CARMEN ELECTRA,** | : | **Judge Dan Aaron Polster** |
| **JESSE GOLDEN,** | : | |
| **RACHEL KOREN,** | : | |
| **JOANNA KRUPA,** | : | |
| **DESSIE MITCHESON,** | : | |
| **EVA PEPAJ,** | : | **FIRST AMENDED** |
| **LUCY PINDER,** | : | **COMPLAINT AND JURY DEMAND** |
| **LINA POSADA,** | : | |
| **CARISSA ROSARIO,** | : | |
| **CORA SKINNER,** | : | |
| **SARA UNDERWOOD, and** | : | |
| **IRINA VORONINA** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CRAZY HORSE LICENSING, INC.,** | : | |
| **ENTERTAINMENT DYNAMICS LLC** | : | |
| **d/b/a CRAZY HORSE SALOON,** | : | |
| **PARKBROOK ENTERTAINMENT INC.** | : | |
| **d/b/a THE AIRPORT CRAZY HORSE** | : | |
| **and THE PLATINUM HORSE,** | : | |
| **FRANK B SPENCER d/b/a CRAZY** | : | |
| **HORSE MEN'S CLUB and CRAZY** | : | |
| **HORSE SALOON,** | : | |
| **ALMI RESTAURANT INC. d/b/a** | : | |
| **CRAZY HORSE MEN'S CLUB, and** | : | |
| **GOLD RESTAURANT INC. d/b/a/** | : | |
| **CRAZY HORSE CLEVELAND** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

Plaintiffs, Brittany Cripliver, Camila Davalos, Mariana Davalos, Carmen Electra, Jesse

Golden, Rachel Koren, Joanna Krupa, Dessie Mitcheson, Eva Pepaj, Lucy Pinder, Lina Posada,

Carissa Rosario, Cora Skinner, Sara Underwood, and Irina Voronina, by and through their

attorneys, BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., hereby submit their First Amended Complaint and Jury Demand against Defendants, Crazy Horse Licensing, Inc., Entertainment Dynamics LLC d/b/a Crazy Horse Saloon (later known as The Airport Crazy Horse), Parkbrook Entertainment, Inc. d/b/a The Airport Crazy Horse and The Platinum Horse, Frank B. Spencer d/b/a Crazy Horse Men's Club and Crazy Horse Saloon, ALMI Restaurant, Inc. d/b/a/ Crazy Horse Men's Club, and Gold Restaurant Inc. d/b/a/ Crazy Horse Cleveland and allege and aver as follows:

## INTRODUCTION

1.      This is an action for damages and other relief arising from the misappropriation, misuse, and alteration of Plaintiffs' images by Defendants in order to promote the Crazy Horse brand and Defendants' gentlemen's clubs, Crazy Horse Airport (aka The Platinum Horse) (fka Crazy Horse Saloon), Crazy Horse Men's Club, and Crazy Horse Cleveland (collectively "the Defendant Clubs").

2.      According to Defendant Crazy Horse Licensing, Inc.'s website (accessible via the URL: http://crazyhorse.com/), the name "Crazy Horse" and the "Horse Head" logo are registered trademarks that are owned by Crazy Horse Licensing, Inc. and used under license by licensees.

3.      Upon information and belief, Defendant Entertainment Dynamics LLC did license and Defendants Parkbrook Entertainment, Inc., Frank B. Spencer, ALMI Restaurant Inc., and Gold Restaurant Inc. currently license the Crazy Horse name and logo from Defendant Crazy Horse Licensing, Inc.

4.      Defendant Crazy Horse Licensing, Inc. is owned in whole or in part by Frank B. Spencer.

5.      Defendant Parkbrook Entertainment, Inc. is owned in whole or in part by Frank B. Spencer.

6.      Defendant ALMI Restaurant Inc. is owned in whole or in part by Frank B. Spencer.

7.      Defendant Gold Restaurant Inc. is owned in whole or in part by Frank B. Spencer.

8.      Defendants work together to advertise, market, and promote the Defendant Clubs. In an effort to drive traffic and economic and commercial benefits to their Clubs, Defendants post pictures of women on their respective webpages and social media platforms, including on Facebook, Twitter, and Instagram.

9.      Defendants have developed and instituted a policy of misappropriation, alteration, and publication of images (including Plaintiffs') on their webpages and social media platforms that they have not paid for, and to which they have no legal right, in order to promote their clubs.

10.      Even a cursory review of Defendants' websites and social media accounts reveals the interconnected nature of Defendants' advertising, promotions, and marketing. For example, as set forth below, Defendant Crazy Horse Licensing Inc. posted misappropriated images of famous models Lina Posada and Rachel Koren, among others, on its primary webpage next to links to each Defendant Club. Similarly, Defendants repeatedly posted advertising, promotions, and marketing to their social media accounts that expressly refer to Crazyhorse.com and the other Defendant Clubs. Finally, Defendants frequently posted the same images of the same Plaintiffs with the same or similar text on or about the same day on their respective social media accounts.

11.      Such uses of Plaintiffs' images implicate Defendants as participating in a concerted scheme of misappropriating Plaintiffs' images and publishing them, without consent or remuneration, on Defendants' social media accounts in order to promote their clubs and the Crazy Horse brand.

3

12.     Defendants' repeated uses of Plaintiffs' images connect Plaintiffs to and associate them with the Defendant Clubs and their respective events and activities, despite the fact that Plaintiffs have never worked at, or affiliated themselves with Defendants or the Defendant Clubs. Furthermore, Plaintiffs have never contracted with or sold their images to Defendants or the Defendant Clubs. Moreover, Plaintiffs have never appeared at the Defendant Clubs and have never endorsed the Defendant Clubs or their respective events and activities.

13.     Despite this, upon information and belief, Defendants' use of Plaintiffs' images drove customers, business, and revenue to the Defendant Clubs.

14.     Defendants did not have Plaintiffs' permission to use their images or likenesses and never asked them for permission to use their images or likenesses.

15.     Defendants have not compensated Plaintiffs for the use of their images or likenesses for commercial or any other purpose.

16.     Defendants knew that their use of Plaintiffs' images and likenesses was unauthorized, and knew that their use of Plaintiffs' images would cause consumer confusion as to Plaintiffs' sponsorship, approval of, affiliation with, association with, and/or employment at Defendants' Clubs.

17.     Defendants' unauthorized use of Plaintiffs' images, likenesses, and/or identities, as described herein, violated Plaintiffs' common law right of privacy through appropriation of their images, as well as the Ohio Deceptive Trade Practices Act (O.R.C. § 4165.02(A)(2) and (3)), the Lanham Act (15 U.S.C. § 1125(a)), and unjustly enriched Defendants.

18.     Plaintiffs seek compensatory damages, disgorgement of Defendants' profits realized through their unlawful use of Plaintiffs' images, likenesses, and identities, treble damages,

4

punitive damages, attorney's fees, injunctive relief, and other such relief as would be fair and just to remedy Defendants' unlawful acts, and to ensure that no such violations occur in the future.

## PARTIES

19.     Plaintiff Brittany Cripliver is a well-known professional model and is a resident and citizen of Los Angeles County, California.

20.     Plaintiff Camila Davalos is a well-known professional model and is a resident of Colombia.

21.     Plaintiff Mariana Davalos is a well-known professional model and is a resident of Colombia.

22.     Plaintiff Carmen Electra is a well-known professional model and is a resident and citizen of Los Angeles County, California.

23.     Plaintiff Jesse Golden is a well-known professional model and is a resident and citizen of Los Angeles County, California.

24.     Plaintiff Rachel Koren is a well-known professional model and is a resident and citizen of San Diego County, California.

25.     Plaintiff Joanna Krupa is a well-known professional model and is a resident and citizen of Los Angeles County, California.

26.     Plaintiff Dessie Mitcheson is a well-known professional model and is a resident and citizen of Orange County, California.

27.     Plaintiff Eva Pepaj is a well-known professional model and is a resident and citizen of Los Angeles County, California.

28.     Plaintiff Lucy Pinder is a well-known professional model and is a resident of the United Kingdom.

5

29.     Plaintiff Lina Posada is a well-known professional model and is a resident and citizen of San Bernardino County, California.

30.     Plaintiff Carissa Rosario is a well-known professional model and is a resident and citizen of Broward County, Florida.

31.     Plaintiff Cora Skinner is a well-known professional model and is a resident and citizen of Los Angeles County, California.

32.     Plaintiff Sara Underwood is a well-known professional model and is a resident and citizen of Multnomah County, Oregon.

33.     Plaintiff Irina Voronina is a well-known professional model and is a resident and citizen of Los Angeles County, California.

34.     Defendant Crazy Horse Licensing Inc. is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio, located at 1474 St. Clair Ave., Cleveland, Ohio 44114. Frank B. Spencer owns, operates, or otherwise controls Defendant Crazy Horse Licensing Inc.

35.     Defendant Entertainment Dynamics LLC d/b/a Crazy Horse Saloon (later known as The Airport Crazy Horse and The Platinum Horse)[1] is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio, located at 16600 Brookpark Rd., Brook Park, Ohio 44135. Upon information and belief, Entertainment Dynamics LLC operated The Airport Crazy Horse from October 2009 to approximately February 25, 2015, at which point Parkbrook Entertainment, Inc. took over operations, ownership, and control of The Crazy Horse Airport.

---

[1] Hereafter, the gentlemen's club once known as "Crazy Horse Saloon" and now known as "The Airport Crazy Horse" and "Platinum Horse" will be referred to as "The Airport Crazy Horse."

6

36.     Defendant Parkbrook Entertainment, Inc. d/b/a The Airport Crazy Horse and The Platinum Horse is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio, located at 16600 Brookpark Rd., Brook Park, Ohio 44135.

37.     Defendant ALMI Restaurant Inc. d/b/a Crazy Horse Men's Club is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio, located at 25540 Miles Rd., Bedford Heights, Ohio 44146.

38.     Defendant Gold Restaurant Inc. d/b/a/ Crazy Horse Cleveland is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio, located at 1438 St. Clair Ave., Cleveland, Ohio 44114.

39.     Defendant Frank B. Spencer is a resident and citizen of Cuyahoga County,  Ohio. The trade name "Crazy Horse Men's Club" is registered in Ohio to Frank B. Spencer. The trade name "Crazy Horse Saloon" is registered in Ohio to Frank B. Spencer. Upon information and belief, Frank B. Spencer owns, operates, and/or controls Crazy Horse Licensing Inc., Parkbrook Entertainment, Inc., ALMI Restaurant Inc., and Gold Restaurant Inc.

## JURISDICTION AND VENUE

40.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy for each Plaintiff against each relevant Defendant, excluding interest and costs, exceeds $75,000.

41.     This Court has subject-matter jurisdiction over Plaintiffs' claims that arise under 15 U.S.C. § 1125(a)(1) (The Lanham Act) based upon 28 U.S.C. § 1331.

42.     Because this Court has original jurisdiction over Plaintiffs' Lanham Act claims, the Court also has supplemental jurisdiction over Plaintiffs' state law claims based on 28 U.S.C. §

7

1367, as they are so related to Plaintiffs' Lanham Act claims that they form part of the same case or controversy.

43.     The Court has personal jurisdiction over Defendants by virtue of their presence, residence, incorporation, operation, and regular and systematic contacts in Ohio.

44.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Defendants reside in this district, this district is where a substantial part of the events or omissions giving rise to the claims stated herein occurred, and Defendants are subject to personal jurisdiction in this venue.

## GENERAL ALLEGATIONS

### I.     PLAINTIFFS ARE PROFESSIONAL MODELS AND THEIR IMAGES ARE COMMERCIALLY VALUABLE

45.     Each Plaintiff is a professional model who earns a living by, *inter alia,* acting, modeling, and selling her image to companies and individuals for the advertisement of products and services.

46.     To make their living, each Plaintiff must, *inter alia,* promote her image and likeness to select clients, companies, commercial brands, media, social media, and entertainment outlets for the advertisement of products and services. She must also protect her own reputation in order to enhance her brand for modeling, acting, hosting, and other opportunities.

47.     Each Plaintiff's career in modeling, acting, and private enterprise has value stemming from the goodwill and reputation she has built, all of which are critical to establishing a brand, being selected for jobs, and maximizing earnings.

48.     Each Plaintiff commands substantial sums of money for the licensed commercial use of her image and likeness.

49.     A model's reputation directly impacts the commercial value associated with the use of one's image, likeness, or identity to promote a product or service.

50.     Each Plaintiff is a professional model in the ordinary course. Each Plaintiff seeks to control the commercial use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, advertising, brand spokesperson, or hosting engagements.

51.     In the modeling industry, reputation is critical; endorsing, promoting, advertising or marketing the "wrong" product, brand, business, or service, or working in a disreputable industry, can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities.

52.     Conversely, association with high-end companies, products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

53.     As set forth below, each Plaintiff's image, likeness, and/or identity has been misappropriated and intentionally altered by or at the direction of Defendants, for use in their online marketing scheme designed to promote the Defendant Clubs.

54.     At no point has any Plaintiff authorized, consented to, or otherwise agreed to Defendants' use of their image, likeness, and/or identity.

## II.     CRAZY HORSE LICENSING INC.'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING

55.     Defendant Crazy Horse Licensing Inc. coordinates or is otherwise responsible for the advertising, marketing, and promotional activities for the Crazy Horse brand through, among other things, active and dynamic use of Crazy Horse's website and various coordinated social

media promotions for use by the Defendant Clubs on Facebook, Twitter, and Instagram ("social media sites"), among others.

56.     Crazy Horse Licensing Inc.'s advertising, marketing, and promotional activities on its website and social media sites are publically accessible through the World Wide Web, including through links on Defendant's website.

57.     At all times relevant to this Complaint, Defendant had actual and exclusive control over the contents contained within and/or displayed on its website.

58.     Upon information and belief, Crazy Horse Licensing Inc. managed, operated and/or controlled a website (accessible via the URL: http://crazyhorse.com/) through which it promoted, endorsed, and marketed the Crazy Horse brand and its affiliated gentlemen's clubs, including the Defendant Clubs, solicited customers, and advertised Crazy Horse events, particularly through the use of images of women in various stages of undress.

59.     Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its webpage through its own personal acts of posting items on the webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

60.     Crazy Horse Licensing Inc. has used Ms. Posada, Ms. Koren, and Ms. Skinner's images and likenesses in advertisements and marketing displays to promote the Crazy Horse brand and the Defendant Clubs, to generate additional revenue, and to increase sales.

### III. CRAZY HORSE LICENSING INC.'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES

#### A. Cora Skinner's Images

61. Upon information and belief, Crazy Horse Licensing Inc. created marketing, advertisements, and promotions using Plaintiff's image and likeness to promote the Crazy Horse Brand and each Defendant Club.

62. Attached as **Exhibit 1** are copies of Crazy Horse Licensing Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

63. Upon information and belief, after creating the marketing, advertisements, and promotions contained in Exhibit 1, Defendant distributed these materials to the Defendant Clubs to be posted on their respective social media platforms.

#### B. Lina Posada's Images

64. Crazy Horse Licensing Inc. posted Plaintiff's image and likeness on its website.

65. Attached as **Exhibit 2** are copies of Crazy Horse Licensing Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

#### C. Rachel Koren's Images

66. Crazy Horse Licensing Inc. posted Plaintiff's image and likeness on its website.

67. Attached as **Exhibit 3** are copies of Crazy Horse Licensing Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### IV. ENTERTAINMENT DYNAMICS LLC AND FRANK B. SPENCER'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING THE AIRPORT CRAZY HORSE (f/k/a CRAZY HORSE SALOON)

68. Upon information and belief, Defendants Entertainment Dynamics LLC and Frank B. Spencer coordinated or were otherwise responsible for the advertising, marketing, and

11

promotional activities for The Airport Crazy Horse from 2009 to February 25, 2015 (known at the time as Crazy Horse Saloon), through, among other things, active and dynamic use of the Club's website and various coordinated social media promotions through Facebook and Twitter ("social media sites"), among others.

69.    Defendants Entertainment Dynamics LLC and Frank B. Spencer's advertising, marketing, and promotional activities on social media sites are publically accessible through the World Wide Web.

70.    Indeed, The Airport Crazy Horse's social media following is substantial.

71.    Upon information and belief, from 2009 to February 25, 2015, Defendants Entertainment Dynamics LLC and Frank B. Spencer had actual and exclusive control over the contents contained within and/or displayed on each of their marketing channels.

72.    Upon information and belief from 2009 to February 25, 2015, Defendants Entertainment Dynamics LLC and Frank B. Spencer managed, operated and/or controlled a website (accessible via the URL: https://crazyhorse.com/home/brook-park/) through which they promoted, endorsed, and marketed their business, solicited customers, and advertised events for The Airport Crazy Horse, particularly through the use of images of women in various stages of undress.

73.    Defendants Entertainment Dynamics LLC and Frank B. Spencer exercised actual control over the contents displayed on their webpage through their own personal acts of posting items on the webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

74.    Upon information and belief from 2009 to February 25, 2015, Defendants Entertainment Dynamics LLC and Frank B. Spencer managed, operated and/or controlled a

12

"Facebook page" (accessible via the URL: https://www.facebook.com/The-Airport-Crazy-Horse-132072060140273/?rf= 1553597891624118) through which they promoted, endorsed, and marketed their business, solicited customers, and advertised events for The Airport Crazy Horse, particularly through the use of images of women in various stages of undress. As of September 24, 2018, 2,344 people followed The Airport Crazy Horse's Facebook page.

75.    Defendants Entertainment Dynamics LLC and Frank B. Spencer exercised actual control over the contents displayed on their Facebook page through their own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

76.    Upon information and belief from 2009 to February 25, 2015, Defendants Entertainment Dynamics LLC and Frank B. Spencer managed, operated and/or controlled a "Twitter account" (accessible via the URL: https://twitter.com/platinum_horse?lang=en) through which they promoted, endorsed, and marketed their business, solicited customers, and advertised events for The Airport Crazy Horse, particularly through the use of images of women in various stages of undress. As of September 24, 2018, 536 people followed The Airport Crazy Horse's Twitter page.

77.     Defendants Entertainment Dynamics LLC and Frank B. Spencer exercised actual control over the contents displayed on their Twitter account through their own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Twitter account.

78.    Defendants Entertainment Dynamics LLC and Frank B. Spencer used Plaintiffs' images and likenesses in advertisements and marketing displays on its social media accounts to generate additional revenue, increase sales, and promote The Airport Crazy Horse.

13

## V.     ENTERTAINMENT DYNAMICS LLC AND FRANK B. SPENCER'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES

### A.  *Irina Voronina's Images*

79.     Defendants Entertainment Dynamics LLC and Frank B. Spencer posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on March 28, 2014.

80.     Attached as **Exhibit 4** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### B.  *Joanna Krupa's Images*

81.     Defendants Entertainment Dynamics LLC and Frank B. Spencer posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on July 3, 2014.

82.     Attached as **Exhibit 5** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### C.  *Lina Posada's Images*

83.     Defendants Entertainment Dynamics LLC and Frank B. Spencer posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on February 6, 2015.

84.     Upon information and belief, Defendants also played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote their clubs.

85.     Attached as **Exhibit 6** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### D.  *Lucy Pinder's Images*

86.     Defendants Entertainment Dynamics LLC and Frank B. Spencer posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on December 29, 2014.

14

87. Attached as **Exhibit 7** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### E. Rachel Koren's Images

88. Upon information and belief, Defendants Entertainment Dynamics LLC and Frank B. Spencer played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote their clubs.

89. Attached as **Exhibit 8** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### F. Sara Underwood's Images

90. Defendants Entertainment Dynamics LLC and Frank B. Spencer posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on August 14, 2013, October 2, 2013, November 6, 2013, and January 29, 2014.

91. Attached as **Exhibit 9** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

## VI. PARKBROOK ENTERTAINMENT, INC.'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING

92. Defendant Parkbrook Entertainment, Inc. coordinates or is otherwise responsible for the advertising, marketing, and promotional activities for The Airport Crazy Horse through, among other things, active and dynamic use of The Airport Crazy Horse's website and various coordinated social media promotions through Facebook and Twitter ("social media sites"), among others.

93. Parkbrook Entertainment, Inc.'s advertising, marketing, and promotional activities on social media sites are publically accessible through the World Wide Web.

15

94.     Indeed, The Airport Crazy Horse's social media following is substantial.

95.     Upon information and belief, since February 25, 2015, Defendant has had actual and exclusive control over the contents contained within and/or displayed on each of these marketing channels.

96.     Upon information and belief Parkbrook Entertainment, Inc. manages, operates and/or controls a website (accessible via the URL: https://crazyhorse.com/home/brook-park/) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for The Airport Crazy Horse, particularly through the use of images of women in various stages of undress.

97.     From February 25, 2015 through the present, Defendant exercised actual control over the contents displayed on its webpage through its own personal acts of posting items on the webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

98. From February 25, 2015 through the present, Parkbrook Entertainment, Inc. managed, operated and/or controlled a "Facebook page" (accessible via the URL: https://www.facebook.com/The-Airport-Crazy-Horse-132072060140273/?rf= 1553597891624118) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for The Airport Crazy Horse, particularly through the use of images of women in various stages of undress. As of September 24, 2018, 2,344 people followed The Airport Crazy Horse's Facebook page.

99.     From February 25, 2015 through the present, Defendant exercised actual control over the contents displayed on its Facebook page through its own personal acts of posting   items

on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

100.    Furthermore, Defendant has actively maintained, left in place, and benefited from all posts to The Airport Crazy Horse Facebook page made by Entertainment Dynamics LLC.

101.    From February 25, 2015 through the present, Parkbrook Entertainment, Inc. managed, operated and/or controlled a "Twitter account" (accessible via the URL: https://twitter.com/platinum_horse?lang=en) through which it promoted, endorsed, and marketed its business, solicited customers, and advertised events for The Airport Crazy Horse, particularly through the use of images of women in various stages of undress. As of September 24, 2018, 536 people followed The Airport Crazy Horse's Twitter page.

102.    Parkbrook Entertainment, Inc. has exercised actual control over the contents displayed on its Twitter account through its own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Twitter account.

103.    Furthermore, Defendant has actively maintained, left in place, and benefited from all posts to The Airport Crazy Horse Twitter account made by Entertainment Dynamics LLC.

104.    Parkbrook Entertainment, Inc. used Plaintiffs' images and likenesses in advertisements and marketing displays on its social media accounts to generate additional revenue, increase sales, and promote The Airport Crazy Horse.

17

## VII. PARKBROOK ENTERTAINMENT, INC.'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES

### A. Brittany Cripliver's Images

105.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on October 7, 2016.

106.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on October 7, 2016.

107.    Attached as **Exhibit 10** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### B. Cora Skinner's Images

108.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on November 24, 2016.

109.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on November 24, 2016.

110.    Attached as **Exhibit 11** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### C. Camila Davalos's Images

111.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on April 9, 2017, May 22, 2017, October 10, 2017, December 21, 2017, and February 12, 2018.

112.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on May 22, 2017, October 10, 2017, December 21, 2017, and February 12, 2018.

18

113.    Attached as **Exhibit 12** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### D.  Dessie Mitcheson's Images

114.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on August 2, 2016 and August 19, 2016.

115.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on August 2, 2016 and August 19, 2016.

116.    Attached as **Exhibit 13** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### E.  Eva Pepaj's Images

117.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on March 17, 2016.

118.    Attached as **Exhibit 14** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### F.  Irina Voronina's Images

119.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on October 14, 2017 and four separate times on October 27, 2017.

120.    Attached as **Exhibit 15** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### G.  Jesse Golden's Images

121.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on May 4, 2017, June 4, 2017, July 1, 2017, September 12, 2017, October 29, 2017, and April 27, 2018.

19

122.     Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on May 4, 2017, June 4, 2017, July 1, 2017, September 12, 2017, October 29, 2017, and April 27, 2018.

123.     Attached as **Exhibit 16** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### H.  Joanna Krupa's Images

124.     Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on September 27, 2016, December 22, 2016, March 29, 2017, July 27, 2017, and October 12, 2017.

125.     Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on September 27, 2016, December 22, 2016, March 29, 2017, July 27, 2017, and October 12, 2017.

126.     Attached as **Exhibit 17** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### I.  Lina Posada's Images

127.     Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on May 29, 2015, June 26, 2015, September 11, 2015, January 15, 2016, February 19, 2016, March 4, 2016, May 13, 2016, June 24, 2016, July 22, 2016, November 18, 2016, August 25, 2017, February 3, 2018, February 10, 2018, February 16, 2018, February 17, 2018, March 24, 2018, April 7, 2018,  April 22, 2018, May 20, 2018, and September 7, 2018.

128.     Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on June 24, 2016, July 22, 2016, November 18, 2016, August 25,

2017, February 3, 2018, February 10, 2018, February 16, 2018, February 17, 2018, March 24, 2018, April 7, 2018, April 22, 2018, May 20, 2018, and September 7, 2018.

129. Upon information and belief, Defendant also played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote its club.

130. Attached as **Exhibit 18** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### J. Lucy Pinder's Images

131. Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on May 15, 2015, June 21, 2015, November 5, 2015, December 22, 2015, January 14, 2016, February 5, 2017, October 1, 2017, November 25, 2017, December 12, 2017, January 17, 2018, February 26, 2018, and March 15, 2018.

132. Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on February 12, 2017, October 1, 2017, November 25, 2017, December 12, 2017, January 17, 2018, February 26, 2018, and March 15, 2018.

133. Attached as **Exhibit 19** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### K. Mariana Davalos's Images

134. Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on April 9, 2017, May 22, 2017, October 10, 2017, December 21, 2017, and February 12, 2018.

21

135.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on May 22, 2017, October 10, 2017, December 21, 2017, and February 12, 2018.

136.    Attached as **Exhibit 20** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### L.  Rachel Koren's Images

137.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on May 4, 2017, June 4, 2017, July 1, 2017, September 12, 2017, October 29, 2017, and April 27, 2018.

138.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on May 4, 2017, June 4, 2017, July 1, 2017, September 12, 2017, October 29, 2017, and April 27, 2018.

139.    Upon information and belief, Defendant also played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote its club.

140.    Attached as **Exhibit 21** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### M.  Sara Underwood's Images

141.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on July 3, 2015, September 23, 2015, October 7, 2015, and August 31, 2016.

142.    Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on August 31, 2016.

22

143.    Attached as **Exhibit 22** are copies of Parkbrook Entertainment, Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

## VIII.    ALMI RESTAURANT, INC. AND FRANK B. SPENCER'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING THE CRAZY HORSE MEN'S CLUB

144.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. coordinate or are otherwise responsible for the advertising, marketing, and promotional activities for Crazy Horse Men's Club through, among other things, active and dynamic use of the Crazy Horse Men's Club's website and various coordinated social media promotions through Facebook and Twitter ("social media sites"), among others.

145.    Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s advertising, marketing, and promotional activities on social media sites are publically accessible through the World Wide Web.

146.    Indeed, Crazy Horse Men's Club's social media following is substantial.

147.    At all times relevant to this Complaint, Defendants Frank B. Spencer and ALMI Restaurant, Inc. had actual and exclusive control over the contents contained within and/or displayed on each of these marketing channels.

148.    Upon information and belief, Defendants Frank B. Spencer and ALMI Restaurant, Inc. manage, operate and/or control a website (accessible via the URL: https://crazyhorse.com/home/bedford-heights/) through which they promote, endorse, and market their business, solicit customers, and advertise events for the Crazy Horse Men's Club, particularly through the use of images of women in various stages of undress.

149.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. have at all times relevant to this Complaint exercised actual control over the contents displayed on their webpage   through

23

their own personal acts of posting items on the webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

150.    Upon information and belief, Defendants Frank B. Spencer and ALMI Restaurant, Inc. manage, operate and/or control a "Facebook page" (accessible via the URL: https://www.facebook.com/Crazy-Horse-Mens-Club-122354644463898/?rf=238959179470868) through which they promote, endorse, and market their business, solicit customers, and advertise events for the Crazy Horse Men's Club, particularly through the use of images of women in various stages of undress. As of September 24, 2018, 2,367 people followed the Crazy Horse Men's Club's Facebook page.

151.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. have at all times relevant to this Complaint exercised actual control over the contents displayed on their Facebook page through their own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

152.    Upon information and belief, Defendants Frank B. Spencer and ALMI Restaurant, Inc. manage, operate and/or control a "Twitter account" (accessible via the URL: https://twitter.com/crazyhorsemc?lang=en) through which they promote, endorse, and market their business, solicit customers, and advertise events for the Crazy Horse Men's Club, particularly through the use of images of women in various stages of undress. As of September 24, 2018, 1,447 people followed the Crazy Horse Men's Club Twitter page.

153.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. have at all times relevant to this Complaint exercised actual control over the contents displayed on their Twitter account through their own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Twitter account.

24

154.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. used Plaintiffs' images and likenesses in advertisements and marketing displays on their social media accounts to generate additional revenue, increase sales, and promote the Crazy Horse Men's Club.

## IX.    FRANK B. SPENCER AND ALMI RESTAURANT, INC.'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES

### A.  Carissa Rosario's Images

155.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on June 12, 2015.

156.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on June 12, 2015.

157.    Attached as **Exhibit 23** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### B.  Carmen Electra's Images

158.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on July 14, 2015.

159.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on July 14, 2015.

160.    Attached as **Exhibit 24** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### C.  Cora Skinner's Images

161.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on August 20, 2013, February 22,

2014, March 27, 2014, July 20, 2014, October 29, 2014, March 13, 2016, September 8, 2016, and November 24, 2016.

162. Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on March 13, 2016, September 8, 2016, and November 24, 2016.

163. Attached as **Exhibit 25** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### D. Camila Davalos's Images

164. Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on July 2, 2015, July 16, 2015, July 17, 2015, January 11, 2017, and July 27, 2017.

165. Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on January 11, 2017 and July 27, 2017.

166. Attached as **Exhibit 26** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### E. Dessie Mitcheson's Images

167. Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on August 5, 2014, June 12, 2015, and January 9, 2017.

168. Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on June 12, 2015.

169.    Attached as **Exhibit 27** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### F.  Irina Voronina's Images

170.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on March 27, 2015.

171.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on March 27, 2015.

172.    Attached as **Exhibit 28** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### G.  Jesse Golden's Images

173.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on March 7, 2017.

174.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on March 7, 2017.

175.    Attached as **Exhibit 29** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### H.  Lina Posada's Images

176.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on February 13, 2015, May 29, 2015, July 10, 2015, September 4, 2015, November 13, 2015, November 27, 2015, January 22, 2016, March 26, 2016, June 17, 2016, July 15, 2016, August 19, 2016, June 11, 2017, July 11, 2017, July 18, 2017, February 24, 2018, March 31, 2018, August 12, 2018, and September 21, 2018.

27

177.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on November 27, 2015, June 17, 2016, July 15, 2016, August 19, 2016, June 11, 2017, July 11, 2017, July 18, 2017, February 24, 2018, March 31, 2018, August 12, 2018, and September 21, 2018.

178.     Upon information and belief, Defendants Frank B. Spencer and ALMI Restaurant, Inc. also played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote its club.

179.     Attached as **Exhibit 30** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### I.   *Lucy Pinder's Images*

180.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on June 14, 2013, August 19, 2013, October 27, 2013, November 17, 2013, November 21, 2013, September 20, 2015, December 8, 2017, December 15, 2017, and July 27, 2018.

181.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on December 8, 2017, December 15, 2017, and July 27, 2018.

182.     Attached as **Exhibit 31** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### J.   *Mariana Davalos's Images*

183.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on July 2, 2015, July 16, 2015, July 17, 2015, January 11, 2017, and July 27, 2017.

28

184.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on January 11, 2017 and July 27, 2017.

185.    Attached as **Exhibit 32** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### K.  *Rachel Koren's Images*

186.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on May 31, 2013, December 19, 2014, August 11, 2015, April 1, 2016, October 7, 2016, March 7, 2017, May 18, 2017, August 2, 2017, August 25, 2017, September 29, 2017, November 24, 2017, May 29, 2018, and July 22, 2018.

187.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on April 1, 2016, October 7, 2016, March 7, 2017, May 18, 2017, August 2, 2017, August 25, 2017, September 29, 2017, October 28, 2017, November 24, 2017, May 29, 2018, and July 22, 2018.

188.    Upon information and belief, Defendants Frank B. Spencer and ALMI Restaurant, Inc. also played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote its club.

189.    Attached as **Exhibit 33** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

29

### L.   Sara Underwood's Images

190.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on August 7, 2013, November 13, 2013, December 18, 2013, March 19, 2014, April 15, 2015, and July 3, 2015.

191.    Attached as **Exhibit 34** are copies of Defendants' uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### X.    GOLD RESTAURANT INC.'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING CRAZY HORSE CLEVELAND

192.    Defendant Gold Restaurant Inc. coordinates or is otherwise responsible for the advertising, marketing, and promotional activities for Crazy Horse Cleveland through, among other things, active and dynamic use of Crazy Horse Cleveland's website and various coordinated social media promotions through Facebook and Twitter ("social media sites"), among others.

193.    Gold Restaurant Inc.'s advertising, marketing, and promotional activities on social media sites are publically accessible through the World Wide Web, including through links on Defendant's website.

194.    Indeed, Gold Restaurant Inc.'s social media following is substantial.

195.    At all times relevant to this Complaint, Defendant had actual and exclusive control over the contents contained within and/or displayed on each of these marketing channels.

196.    Upon information and belief, Gold Restaurant Inc. manages, operates and/or controls a website (accessible via the URL: https://crazyhorse.com/home/Cleveland-Ohio/) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Crazy Horse Cleveland, particularly through the use of images of women in various stages of undress and links to Crazy Horse Cleveland's social media accounts.

30

197.    Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its webpage through its own personal acts of posting items on the webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

198.    Upon information and belief, Gold Restaurant Inc. manages, operates and/or controls a "Facebook page" (accessible via the URL: https://www.facebook.com/Crazy-Horse-Cleveland-181740621862161/) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Crazy Horse Cleveland, particularly through the use of images of women in various stages of undress. As of September 24, 2018, 3,960 people followed the Crazy Horse Cleveland's Facebook page.

199.    Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its Facebook page through its own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

200.    Upon information and belief, Gold Restaurant Inc. manages, operates and/or controls an "Instagram page" (accessible via the URL: https://www.instagram.com/Crazy_Horse_Cleveland/?hl=en) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Crazy Horse Cleveland, particularly through the use of images of women in various stages of undress. As of September 24, 2018, 864 people followed the Crazy Horse Cleveland's Instagram page.

201.    Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its Instagram page through its own personal acts of posting items on the

31

Instagram page, or by expressly permitting and condoning another person(s)' act of posting items on the Instagram page.

202.    Upon information and belief, Gold Restaurant Inc. manages, operates and/or controls a "Twitter account" (accessible via the URL: https://twitter.com/Crazy_Horse_CLE) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for the Crazy Horse Cleveland, particularly through the use of images of women in various stages of undress. As of September 19, 2018, 627 people followed the Crazy Horse Cleveland's Twitter page.

203.    Gold Restaurant Inc. has at all times relevant to this Complaint exercised actual control over the contents displayed on its Twitter account through its own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Twitter account.

204.    Gold Restaurant Inc. has used Plaintiffs' images and likenesses in advertisements and marketing displays on its social media accounts to generate additional revenue, increase sales, and promote the Crazy Horse Cleveland.

## XI.    GOLD RESTAURANT INC.'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES

### A.  Carissa Rosario's Images

205.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on February 26, 2016.

206.    Attached as **Exhibit 35** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### B.  *Carmen Electra's Images*

207.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on July 28, 2015.

208.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Twitter page on July 28, 2015.

209.    Attached as **Exhibit 36** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### C.  *Cora Skinner's Images*

210.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on December 3, 2012 and November 24, 2016.

211.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Twitter page on November 24, 2016.

212.    Attached as **Exhibit 37** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### D.  *Camila Davalos's Images*

213.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on March 2, 2017, July 6, 2017, August 8, 2017, August 24, 2017, and July 27, 2017.

214.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Twitter page on May 29, 2017, July 6, 2017, August 24, 2017, and July 27, 2018.

215.    Attached as **Exhibit 38** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### E.  Eva Pepaj's Images

216.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on March 16, 2016.

217.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Twitter page on March 16, 2016.

218.    Attached as **Exhibit 39** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### F.  Jesse Golden's Images

219.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on April 22, 2017 and June 23, 2017.

220.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Twitter page on April 22, 2017 and June 23, 2017.

221.    Attached as **Exhibit 40** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### G.  Joanna Krupa's Images

222.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on July 3, 2014

223.    Attached as **Exhibit 41** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### H.  Lina Posada's Images

224.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on April 24, 2015, May 15, 2015, September 11, 2015, October 23, 2015, December 10, 2015, January 8, 2016, March 11, 2016, April 22, 2016,

May 20, 2016, July 8, 2016, August 12, 2016, December 9, 2016, February 10, 2017, March 10, 2017, May 12, 2017, March 30, 2018, June 22, 2018, and July 20, 2018.

225.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Twitter page on March 13, 2015, May 15, 2015, September 11, 2015, November 20, 2015, December 10, 2015, July 8, 2016, August 12, 2016, June 13, 2018, and July 20, 2018.

226.    Upon information and belief, Defendant also played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote its club.

227.    Attached as **Exhibit 42** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### I.    *Lucy Pinder's Images*

228.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on January 26, 2015, July 21, 2015, August 6, 2015, May 10, 2017, December 7, 2017, September 1, 2018, September 6, 2018, and September 7, 2018.

229.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Twitter page on August 6, 2015, May 10, 2017, December 7, 2017, and August 22, 2018.

230.    Attached as **Exhibit 43** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### J.    *Mariana Davalos's Images*

231.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on March 2, 2017, July 6, 2017, August 18, 2017, August 24, 2017, and July 27, 2018.

232.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Twitter page on May 29, 2017, July 6, 2017, August 24, 2017, and July 27, 2018.

233.    Attached as **Exhibit 44** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### K.  Rachel Koren's Images

234.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on August 25, 2015, April 22, 2017, June 23, 2017, and November 24, 2017.

235.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Twitter page on June 22, 2015, August 25, 2015, April 22, 2017, June 23, 2017, and November 24, 2017.

236.    Upon information and belief, Defendant also played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote its club.

237.    Attached as **Exhibit 45** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

### L.  Sara Underwood's Images

238.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Facebook page on August 21, 2013, February 5, 2014, March 19, 2014, April 23, 2014, December 17, 2014, and July 3, 2015.

239.    Gold Restaurant Inc. posted Plaintiff's image and likeness on the Crazy Horse Cleveland's Twitter page on July 3, 2015.

240.    Attached as **Exhibit 46** are copies of Gold Restaurant Inc.'s uses of Plaintiff's image and likeness, which is hereby incorporated by reference.

36

## XII.  DEFENDANTS' USE OF PLAINTIFFS' IMAGES WAS UNAUTHORIZED, MISLEADING, CONFUSING, AND FRAUDULENT

241.    Defendants used Plaintiffs' images and likenesses to attract clientele, promote the Defendant Clubs, and generate revenue for Defendants.

242.    Defendants' use of Plaintiffs' images and likenesses, however, was unauthorized, misleading, confusing, and fraudulent.

243.    Defendants' use and alteration of Plaintiffs' images and likenesses on Defendants' social media accounts for their respective clubs falsely implies that Plaintiffs have worked for, endorsed, sponsored, approved of, or were otherwise associated or affiliated with the Defendants, their clubs, and their activities.

244.    Plaintiffs have never been employed by Defendants or contracted with Defendants to participate in events at the Defendant Clubs.

245.    Plaintiffs have never endorsed, sponsored, approved of, or otherwise associated or affiliated themselves with Defendants, their clubs, and their activities.

246.    Plaintiffs never gave permission, or assigned, licensed, or otherwise consented to Defendants' use or alteration of their images, likenesses, or identities to advertise, promote, market or endorse Defendants, their clubs, and their activities.

247.    Defendants have never contacted Plaintiffs, either directly or indirectly, to request permission to use their images, likenesses, or identities to advertise, promote, market or endorse Defendants, their clubs, and their activities.

248.    Defendants never hired or contracted with Plaintiffs to advertise, promote, market or endorse Defendants, their clubs, and their activities.

37

249.    Defendants neither offered nor paid any remuneration to Plaintiffs for the unauthorized use of their images, likenesses, or identities.

250.    Indeed, Plaintiffs only recently learned of Defendants' unauthorized use of their misappropriated images.

## FIRST CAUSE OF ACTION

## INVASION OF PRIVACY BY APPROPRIATION

251.    Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

252.    Ohio recognizes a common law right of publicity whereby Plaintiffs hold the exclusive right to control the use of their image and likeness.

253.    Indeed, Ohio law provides that one who appropriates to his own benefit the image or likeness of another is subject to liability to the other for invasion of privacy.

254.    As demonstrated above, Defendants published, printed, displayed, and/or otherwise publically used Plaintiffs' images, likenesses, and identities on their social media outlets for the purposes of trade and/or commercial advertising, including, but not limited to, promoting, advertising, and marketing the Defendant Clubs, and their respective events and activities.

255.    Plaintiffs' faces and/or bodies are clearly visible and readily identifiable and distinguishable in the images Defendants used.

256.    Plaintiffs never consented to, authorized, or otherwise permitted Defendants' use of their images, likenesses, or identities for any purpose. Rather, Defendants misappropriated Plaintiffs' images in a clandestine fashion without Plaintiffs' knowledge and without even attempting to acquire Plaintiffs' permission.

38

257.    Defendants acted intentionally by selecting Plaintiffs' images and, knowing they did not have permission to use the images, posted the images to Defendants' social media platforms in an effort to market themselves and their activities and events without the authorization of Plaintiffs.

258.    In the alternative, at a minimum, Defendants acted with reckless disregard to Plaintiffs' legal rights by expressly permitting, allowing, or condoning the use of Plaintiffs' images on their website and/or social media platforms for the purpose of marketing and advertising Defendants, their clubs, and their activities.

259.    Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to the use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

260.    Nonetheless, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

261.    Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as the Defendant Clubs and their related activities.

262.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likenesses, Defendants have damaged Plaintiffs' by failing to compensate them for the value of each misappropriated use of their likeness.

263.     As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likeness, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains.

264.     As alleged in this Complaint, Defendants' willful and malicious acts have and will continue to cause Plaintiffs irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

265.     As alleged in this Complaint, Defendants' actions demonstrate malice or aggravated or egregious fraud, and/or a flagrant disregard of Plaintiffs' rights, so as to warrant the imposition of punitive damages.

## **SECOND CAUSE OF ACTION**

### **NEGLIGENCE**

266.     Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

267.     Defendants had a duty to refrain from appropriating the images of those with whom they had not contracted and had not paid.

40

268.    As previously described, Defendants violated said duty by posting Plaintiffs' images on Defendants' websites and social media accounts in order to advertise, promote, and market Defendants, their clubs, and their activities.

269.    Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as the Defendant Clubs and their related activities.

270.    As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likenesses, Defendants have damaged Plaintiffs' by failing to compensate them for the value of each misappropriated use of their likeness.

271.    As alleged in this Complaint, Defendants' willful and malicious acts have and will continue to cause Plaintiffs irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

272.    As alleged in this Complaint, Defendants' actions demonstrate malice or aggravated or egregious fraud, and/or a flagrant disregard of Plaintiffs' rights, so as to warrant the imposition of punitive damages.

## THIRD CAUSE OF ACTION

## UNJUST ENRICHMENT

273.    Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

41

274.    As previously alleged, Defendants used Plaintiffs' misappropriated images and likenesses to advertise and promote Defendants, their clubs, and their activities, thereby driving customers, business, and revenue to Defendants, their clubs, and their activities. Accordingly, Plaintiffs conferred a benefit on Defendants.

275.    Defendants knew that they benefited from the use of Plaintiffs' images as is evident from the fact that Defendants repeatedly posted Plaintiffs' images to promote and advertise Defendants, their clubs, and their activities.

276.    Nonetheless, although Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to use and exploitation of a professional model's image and likeness for Defendants' commercial benefit, Defendants retained the benefits of using Plaintiffs' images and likenesses without compensating Plaintiffs.

277.    Moreover, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

278.    Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as the Defendant Clubs and their related activities.

279.    As a direct and proximate result of Defendants' actions, Defendants have damaged Plaintiffs by failing to compensate them for the value of each misappropriated use of their likeness.

42

280.     As a direct and proximate result of the benefit Plaintiffs conferred on Defendants, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains as remuneration.

281.     As alleged in this Complaint, Defendants' willful and malicious acts have and will continue to cause Plaintiffs irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

### FOURTH CAUSE OF ACTION

**VIOLATION OF THE OHIO DECEPTIVE TRADE
PRACTICES ACT, O.R.C. § 4165.02(A)(2) AND (3)**

282.     Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

283.     Defendants are "persons" within the meaning of O.R.C. § 4165.01(D).

284.     Plaintiffs are "persons" within the meaning of O.R.C. § 4165.01(D).

285.     In violation of O.R.C. § 4165.02(A), Defendants engaged in deceptive trade practices in the course of their business by misappropriating Plaintiffs' images and using such images without authorization on their websites and/or social media platforms in such a way that causes likelihood of confusion or misunderstanding as to Plaintiffs' sponsorship, approval, affiliation, connection, and/or association with Defendants, their clubs, and their activities.

43

286.    Indeed, as described above, Defendants' use of Plaintiffs' images and likenesses represents to the public that Plaintiffs work for, sponsor, approve of, or are affiliated, connected, or otherwise associated with Defendants, their clubs, and their activities.

287.    Defendants' advertisements, promotions, and publications using Plaintiffs' images and likenesses, however are false, misleading, confusing, and fraudulent. Plaintiffs do not work for and neither sponsor nor approve of Defendants, their clubs, or their activities, nor are Plaintiffs affiliated, connected, or otherwise associated with Defendants, their clubs, or their activities.

288.    Plaintiffs never consented to, authorized, or otherwise permitted Defendants' use of their images, likenesses, or identities for any purpose. Rather, Defendants misappropriated Plaintiffs' images in a clandestine fashion without Plaintiffs' knowledge and without even attempting to acquire Plaintiffs' permission.

289.    Defendants acted intentionally by selecting Plaintiffs' images and, knowing they did not have permission to use the images, posted the images to Defendants' social media platforms in an effort to market Defendants, their clubs, and their activities.

290.    In the alternative, at a minimum, Defendants acted with reckless disregard to Plaintiffs' legal rights by expressly permitting, allowing, or condoning the use of Plaintiffs' images on their social media platforms for the purpose of marketing and advertising Defendants, their clubs, and their activities.

291.    Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to the use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

44

292.     Nonetheless, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

293.     Upon information and belief, as a direct and proximate result of Defendants' deceptive trade practices, members of the public were deceived into believing that Plaintiffs worked for, sponsored, approved of, or were affiliated, connected, or otherwise associated with Defendants, their clubs, or their activities, resulting in increased patronage to Defendants' clubs, or their activities, increased business, and increased profits for Defendants.

294.     Defendants' deceptive trade practices have and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as the Defendant Clubs and their related activities.

295.     As a direct and proximate result of Defendants' deceptive trade practices, Defendants have damaged Plaintiffs by failing to compensate them for the value of each misappropriated use of their likeness.

296.     As a direct and proximate result of Defendants' deceptive trade practices, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains.

297.     As alleged in this Complaint, Defendants' deceptive trade practices have and will continue to cause Plaintiffs irreparable harm. Accordingly, pursuant to O.R.C. § 4165.03(A), Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs'

misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

298.      Defendants' deceptive trade practices were purposeful and malicious in that Defendants knowingly violated Plaintiffs' rights solely to benefit their businesses, increase profits, and avoid paying money to legally acquire the right to commercially use Plaintiffs' images. Accordingly, pursuant to O.R.C. § 4165.03(B), Plaintiffs are entitled to reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(A)

299.      Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

300.      Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), applies to Defendants.

301.      Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects Plaintiffs from the Defendants' conduct described herein.

302.      Defendants used Plaintiffs' images, likenesses, and/or identities as described herein without authority in order to, *inter alia*, create the perception that Plaintiffs worked at, endorsed, or were otherwise affiliated with Defendants, their clubs, and their activities and/or that Plaintiffs consented to or authorized Defendants or their clubs' usage of Plaintiffs' images in order to advertise, promote, and market Defendants, their clubs, and their activities.

303.      Defendants' use and alteration of Plaintiffs' images, likenesses, and/or identities to advertise, promote, and market Defendants' businesses, their clubs, and their activities as described in this Complaint was false and misleading and a misrepresentation of fact.

304.      Defendants' unauthorized use and alteration of Plaintiffs' images, likenesses, and/or identities as described in this Complaint constitute false advertising by suggesting or

implying, *inter alia*, that (1) Plaintiffs worked at, endorsed, or were otherwise affiliated with Defendants, their clubs, and/or their activities, (2) Plaintiffs consented to or authorized Defendants or their clubs to use their images in order to advertise, promote, and market Defendants, their clubs, and/or their activities, and/or (3) Plaintiffs would participate in or appear at the specific events promoted in Defendants' advertisements and promotions.

305.    Defendants' false advertising described above has the capacity or tendency to confuse or deceive consumers, including actual and prospective patrons to the Defendant Clubs, as to the general quality of attendees and participants at the Defendant Clubs and in their events, as well as specifically whether Plaintiffs worked or would appear in person at, endorsed, sponsored, or approved of, or were otherwise affiliated or associated with Defendants, their clubs, and/or their activities.

306.    Upon information and belief, Defendants' false and deceptive advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked or would appear in person at, endorsed, sponsored, or approved of, or were otherwise affiliated or associated with Defendants, their clubs, and their activities.

307.    Among other things, upon information and belief, such unauthorized use and alteration of Plaintiffs' images and likenesses misled and served to entice consumers and prospective consumers to visit the Defendant Clubs and participate in and attend events at the Defendant Clubs and thereby had a material effect and impact on the decision of patrons and prospective patrons to visit Defendants' business establishment.

308.    Defendants' advertisements, promotions, and marketing of the Defendant Clubs and their events occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons    from

47

several different states across the United States. Defendants principally use the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure traffic and patronage to their establishments.

309.    Defendants' unauthorized use of Plaintiffs' images, likenesses, and/or identities as described herein was designed to benefit Defendants' commercial and business interests by, among other things, promoting the Defendant Clubs and their activities and attracting clientele to the Defendant Clubs, thereby generating revenue for Defendants to the detriment of Plaintiffs.

310.    Defendants knew or should have known that their unauthorized use of Plaintiffs' images, likenesses, and/or identities would cause consumer confusion as described in this Complaint.

311.    Defendants' unauthorized use and alteration of Plaintiffs' images, likenesses, and/or identities, as described herein violates 15 U.S.C. §1125(a), and was wrongful.

312.    Defendants' wrongful conduct as described herein was willful.

313.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of their interests and rights, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

314.    The method and manner in which Defendants used and altered Plaintiffs' images further evinces that Defendants were aware of and/or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their images to advertise Defendants' businesses.

315.    Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement  with,

or endorsement of disreputable establishments, such as the Defendant Clubs and their related activities.

316.    As a direct and proximate result of Defendants' use and alteration of Plaintiffs' images and likenesses, Defendants have also damaged Plaintiffs by failing to compensate them for such use, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their images and likenesses in an amount to be established by proof at trial.

317.    As a direct and proximate result of Defendants' conduct as alleged herein, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

318.    As alleged in this Complaint, Defendants' actions have and will continue to cause Plaintiffs irreparable harm. Accordingly, pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

319.    Defendants' conduct was purposeful and malicious in that Defendants knowingly violated Plaintiffs' rights solely to benefit their businesses, increase profits, and avoid paying money to legally acquire the right to commercially use Plaintiffs' images, and consequently, exceptional relief is warranted pursuant to 15 U.S.C. § 1117(a), entitling Plaintiffs to treble damages and reasonable attorneys' fees.

## **INJUNCTION**

320.    Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

321.    Defendants have misappropriated Plaintiffs' images and likenesses for use in Defendants' marketing, advertisements, and promotions, thereby falsely suggesting or implying, *inter alia*, that (1) Plaintiffs worked at, endorsed, or were otherwise affiliated with Defendants, Defendants' Clubs, and/or their activities, (2) Plaintiffs consented to or authorized Defendants or Defendants' Clubs to use their images in order to advertise, promote, and market Defendants, Defendants' Clubs, and/or their activities, and/or (3) Plaintiffs would participate in or appear at the specific events promoted in Defendants' advertisements and promotions.

322.    As described above, Defendants' actions violate state and federal law and have caused and will continue to cause Plaintiffs irreparable harm for which there is no adequate remedy at law.

323.    Furthermore, in light of Defendants' repeated violation of Plaintiffs' rights on multiple occasions, injunctive relief is necessary to prohibit Defendants from continuing to engage in the conduct described in this Complaint.

324.    Plaintiffs therefore seek injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from Defendants' social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

325.    Such injunctive relief will not cause harm to any third parties. Rather, such injunctive relief will benefit third parties and the public, as such relief will aid in mitigating the misleading and confusing effects of Defendants' false advertising.

50

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants in amounts to be determined at trial, as follows:

1.      Compensatory damages in an amount in excess of the jurisdictional limits of  this Court;

2.      Disgorgement of profits attributable to Defendants' misappropriation of Plaintiffs' images and likenesses;

3.      Treble damages;

4.      Punitive damages;

5.      Attorneys' fees and costs;

6.      Pre and post judgment interest;

7.      Injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization; and

8.      Such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ David C. Harman
Janet G. Abaray (2943)
David C. Harman (87882)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE P.C.**
312 Walnut St., Suite 2090
Cincinnati, OH 45202
Phone: (513) 852-5600
Fax: (513) 852-5611
Email: jabaray@burgsimpson.com
Email: dharman@burgsimpson.com

*Attorneys for Plaintiffs*

51

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

/s/ David C. Harman
David C. Harman (87882)

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2018, a true and correct copy of the

foregoing was served by certified mail, postage prepaid, upon the following:

Crazy Horse Licensing, Inc.,
Parkbrook Entertainment, Inc.,
Frank B. Spencer,
ALMI Restaurant, Inc., and
Gold Restaurant, Inc.
c/o J. Michael Murray
BERKMAN GORDON MURRAY & DEVAN
55 Public Square, Suite 2200
Cleveland, OH 44113

and

Entertainment Dynamics, LLC
William J. Kirchner
339 Skyview Rd.
Cleveland, OH 44109

/s/ David C. Harman
David C. Harman (87882)

52